UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KRISTINE THAYER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 9-19-B-K |
| | ) |
| EASTERN MAINE MEDICAL CENTER, | ) |
| et al., | ) |
|     Defendants | ) |

**ORDER ON MOTIONS**

Trial in this matter is scheduled to commence on July 12, 2010. I now have before me four pretrial motions requiring preliminary ruling. These motions include: (1) Plaintiff Thayer's motion in limine regarding the admissibility of evidence concerning other physicians (Doc. No. 93); (2) Defendants' joint motion to bifurcate for trial the libel claim against Tabbah and the retaliation claim against Eastern Maine Medical Center (Doc. No. 94); (3) Defendants' motion in limine to exclude evidence of alleged defamatory statements not alleged in plaintiff's amended complaint (Doc. No. 95); and (4) Defendants' motion in limine to exclude professional competence review records (Doc. No. 99). I now enter the following orders on these motions:

**Defendants' Motion to Bifurcate (Doc. No. 94)**

The question of whether to bifurcate claims is guided by several factors:

> (1) whether a separation of the issues for trial will expedite disposition of the action; (2) whether such separation will conserve trial time and other judicial resources; (3) whether such separation will be likely to avoid prejudice to any party at trial that may occur in the absence of separation; and (4) whether the issues are essentially independent of each other so that there will be no need to duplicate the presentation of significant areas of the evidence in the separated proceedings.

Thorndike v. Daimler Chrysler Corp., 220 F.R.D. 6, 7-8 (D. Me. 2004). None of these factors weighs in favor of bifurcation in this instance. In this case the factual overlap between the claim

against Dr. Tabbah and Eastern Maine Medical Center is extensive. Dr. Thayer contends that Dr. Mark Brown brought Eastern Maine's disciplinary action against her in large measure because of the underlying animosity between her and Tabbah. A jury would necessarily need to consider the evidence of that relationship, including the alleged incidents of libel, in order to properly assess the whistleblower claim. I do not see how either defendant is unfairly prejudiced by having the claims jointly tried. The jury can easily understand that Dr. Tabbah was not Dr. Thayer's employer and that she has no whistleblower retaliation claim against him. Likewise, a jury can easily understand that it is Dr. Tabbah, not Eastern Maine Medical Center, who is responsible for libelous statements, if it finds that any were made. There is nothing prejudicial in the joinder of these claims.

The more troubling issue, and the one which the plaintiff never addresses, is whether the two claims are properly joined under Rule 20(a)(2)(A) of the Federal Rules of Civil Procedure. According to Rule 20, persons may be joined in one action if any right to relief is asserted against them jointly, severally, or in the alternative, arising out of the same series of transactions, and there are questions of law or fact common to all defendants. Defendants claim that there is no right to relief asserted against them jointly, severally, or in the alternative, and thus plaintiff does not satisfy the requirement of Rule 20. They also claim there are no questions of law or fact common to all defendants, but I am satisfied that there is considerable factual overlap, relating primarily to the motivation for commencement of the disciplinary review. Dr. Thayer's theory is that Dr. Brown commenced the review because Dr. Thayer complained about Dr. Tabbah's conduct, including some of the defamatory statements he allegedly made about her. For example, Dr. Brown agreed during his deposition that it is inappropriate for a doctor

to tell a patient's mother that her child was not sewn back together correctly because of another doctor's error. Dr. Thayer alleges she informed Dr. Brown that Dr. Tabbah had been making exactly this type of allegedly defamatory statement to the mother of one of her patients. Dr. Brown did not investigate the incident, nor did he initiate an Ad Hoc Committee investigation involving Dr. Tabbah. This example is but one demonstration of the interrelated nature of the defamation claim with the claim that Dr. Brown retaliated against Dr. Thayer because she complained about Dr. Tabbah.

While Dr. Tabbah and Eastern Maine Medical Center are not alleged to be joint tortfeasors, Dr. Thayer is alleging that Dr. Tabbah and Eastern Maine Medical Center are liable for some portion of the loss she suffered in connection with this series of transactions. She therefore has met the first prong of the test as she is claiming a right to relief in the alternative. See Formosa Plastic Corp. U.S.A. v. ACE Am. Ins. Co., 259 F.R.D. 95, 101 (D. N.J. 2009). Furthermore, as indicated above, at least one common issue of fact exists surrounding these events and thus the second prong is satisfied as well. The motion to bifurcate is denied.

**Defendants' Motion in Limine to Exclude Defamatory Statements
Not Alleged in the Complaint (Doc. No. 95)**

This motion is granted in part and denied in part. As Dr. Thayer indirectly concedes, under Maine law the only statements that are actionable are the specific statements alleged in the complaint and Dr. Thayer's right to direct recovery is limited to those statements. (See Pl.'s Dismissal of Mot. to Amend, Doc. No. 109). The statements made by Dr. Tabbah to the Ad Hoc Committee were not alleged in the complaint and cannot be the basis for direct recovery in a defamation action. Furthermore, even if Dr. Thayer had alleged those statements in her complaint or pressed her motion to amend the complaint to include them, in all probability Dr. Thayer could not have based her direct recovery claims on those statements. See Landsberg v.

3

Me. Coast Regional Health Facilities, No. 08-cv-59-B-W, 2009 WL 995171, *10, 2009 U.S. Dist. Lexis 37390, *27-30 (D. Me. Apr. 10, 2009) (Recommended Decision, Kravchuk, M.J.) (noting that the immunity from suit provisions apply to physicians whether they are alleged to have acted with or without malice based upon statutory construction), rejected on other grounds, 640 F. Supp. 2d 108 (D. Me. 2009) (Woodcock, C.J.). However, the confidentiality and immunity provisions of the Maine Health Security Act, 24 M.R.S.A. §§ 2510, 2511, are not without limitation. As Chief Judge Woodcock noted when affirming the recommended decision in part, a ruling regarding the right to direct recovery on these types of statements does not necessarily equate with a ruling on the admissibility of the statements. Landsberg v. Me. Coast Regional Health Facilities, 604 F. Supp. 2d 108, 112 n.3 (D. Me. 2009). I will discuss the potential admissibility of these statements in connection with the defendants' motion in limine pertaining to Count I. However, I am not persuaded that Dr. Thayer can offer the statements as evidence of Dr. Tabbah's "malice" in support of her defamation claim because that would be nothing more than an indirect attempt to negate the immunity from suit provided by the statute. If Dr. Tabbah's statements made in the context of the professional review records are admissible on the whistleblower's retaliation claim, then he is entitled to a limiting instruction that they are offered to explain the circumstances underlying the claim of retaliation and not as proof of the elements of the defamation claim.

**Defendants' Motion in Limine on Count I (Doc. No. 99)**

This motion is limine contains three components. Eastern Maine Medical Center seeks to exclude the following professional competence review records and testimony resting on those records: (1) Dr. Thayer's own records; (2) Dr. Tabbah's records; and (3) records relating to other practitioners at EMMC. Because the reasons for objecting to the use of these records vary

4

greatly, I will discuss them separately.  However, both sides agree that 24 M.R.S. § 2510-A, which broadly prohibits admitting in evidence in any civil action "all professional competence review records," is relevant to this dispute.  Dr. Thayer maintains that she falls within the exception set forth in § 2510-A(2), which provides that when a physician contests an adverse professional competence review action against that physician the confidentiality provisions do not apply.

### 1. *Dr. Thayer's own records*

EMMC argues that Dr. Thayer does not fall within the exception because the Corrective Action Plan of October 24, 2007, did not result in an adverse professional competence review action against Dr. Thayer.  Based upon Judge Hornby's ruling on the motion for summary judgment <u>and</u> the plain meaning of the statutory language in both the Maine Health Security Act and the MWPA[1], EMMC's Executive Committee imposed <u>restrictions</u> on Dr. Thayer's ability to remain on the medical staff by requiring her to submit to heightened supervision, anger management counseling, and increased risk of future discipline if she engaged in what she regarded as further whistleblowing activities involving other physicians.  Apparently EMMC takes the position that because the <u>restrictions</u> imposed by the Corrective Action Plan were not necessarily reportable to a national data bank they cannot be challenged by Dr. Thayer in this proceeding.  The Maine statute does not provide any such limitation.  The motion in limine is denied as to Dr. Thayer's own records and testimony resting on those records.[2]

---

[1] That statute, 26 M.R.S. § 833(1)(E), specifically references 24 M.R.S. § 2502, the Health Security Act, as coming within the protection of the Whistleblowers' Protection Act.

[2] The parties are cautioned that to the extent written records or testimony is offered, appropriate redactions should be made to insure patient confidentiality and exclusion of otherwise extraneous materials.

*2. Dr. Tabbah's records*

Thayer does not "strenuously" object to the exclusion of Dr. Tabbah's records, provided it is a two-way street and the defendants' are prevented from introducing Dr. Bancroft's letter which would apparently be found in Dr. Tabbah's records. (I am a little unclear how this would play out, because it appears to me that Dr. Thayer will want to question Dr. Mark Brown about the procedure he followed when she complained about Dr. Tabbah's conduct in the four cases in dispute. Certainly nothing in this ruling would prevent her from questioning Dr. Brown about the absence of corrective action being taken against Dr. Tabbah.) At this juncture, I will grant this portion of the motion in limine, in part, and exclude Dr. Tabbah's written records. However, the parties should bear in mind that this ruling is tentative only and it could well develop that evidence surrounding the Bancroft letter will become admissible. If it does become admissible, it might also open up further evidence from Dr. Thayer regarding other physician's experiences with Dr. Tabbah. I specifically reject the defendants' argument that evidence concerning Dr. Tabbah's "treatment" by Dr. Mark Brown is not admissible because he was not similarly situated to Dr. Thayer. The theory of this case is that Dr. Mark Brown was willing to overlook Dr. Tabbah's allegedly poor communications and other inappropriate actions while seeking to discipline Dr. Thayer for objecting to certain of Dr. Tabbah's behaviors. It is actually Dr. Thayer's point that they were not treated similarly and that she was branded as the disruptive one precisely because she complained about Dr. Tabbah. I am not at all sure that evidence of a *lack* of disciplinary records within Dr. Tabbah's file has anything to with the Health Security Act's confidentiality provisions or that such evidence would necessarily lead to the admission of the Bancroft letter.

### 3. *Professional Competence Review Records Involving Other Physicians*

Dr. Thayer has indicated that she intends to offer the testimony of two other physicians only and thus this portion of the motion does not apply to four practitioners as the defendants indicate in their motion. I will discuss those two physicians in the context of Thayer's motion in limine. It appears likely that it would be EMMC that would seek to introduce the actual professional competence records of these two physicians if they should testify. In any event, I intend to defer ruling upon the admissibility of any such records or testimony based upon the records. Their records would become relevant only if they were allowed to testify regarding their cases.

### Plaintiff's Motion in Limine Seeking Admission of Testimony By Other Physicians Alleging Retaliatory Conduct (Doc. No. 93)

Dr. Thayer wishes to use testimony from two other female physicians who both left employment at Eastern Maine Medical Center and who both complained of various forms of discrimination in the process that lead to their *terminations.* Unlike Dr. Thayer, who was not actually terminated by the hospital, one of these physicians was terminated because of complaints that her interactions with other employees were unacceptable and the other one was terminated allegedly because of quality of care issues involving patients. The parties agree that, legally, evidence of other seemingly unconnected acts of discrimination may be admissible if the trial court finds them to be relevant and not unfairly prejudicial or unduly likely to cause delay or waste of time. In other words, the trial judge is guided by Rule 401 and Rule 403 of the Federal Rules of Evidence. I will consider each physician separately.

### 1. *Dr. G*

Dr. G. was terminated after an internal and external peer review of 15 of her charts resulted in suspension of privileges because of quality of care issues. She sued the hospital and

7

Dr. Thayer submitted a copy of the court complaint in support of her motion.  Dr. G. maintained that the suspension was motivated by her gender and by the greed of competing medical practices.  It is true that Dr. G. alleges that the complaints against her arose after she expressed a patient safety concern relating to another female surgeon who she felt was attempting a procedure she was unqualified to attempt.  However, the major focus of Dr. G's lawsuit was that the hospital had unfairly suspended her privileges based upon alleged safety concerns primarily because other surgeons' practices united against her for economic reasons and because she was a woman.  While Dr. G's allegations may have some limited relevance in terms of using the disciplinary process as a retaliatory measure for complaints about other physicians, the fact is that Rule 403 virtually mandates the exclusion of this sort of evidence.  The alleged retaliatory aspect of Dr. G's termination only has probative value if the Hospital's concerns about patient safety were ill-founded.  Dr. G's lawsuit was not tried to termination and there was neither a finding that Dr. G. was wrongfully terminated nor an admission of the same.  Thus, in order for the evidence of her termination to have any probative value to this case, the jury would have to hear the entire evidence about why Dr. G's privileges were suspended and then determine that they should not have been suspended *and* that the entire inquiry had been undertaken in retaliation for her complaint about the other surgeon.  The unfair prejudice, confusion of issues and the risk of misleading the jury substantially outweigh any marginal probative value that Dr. G's termination might have and the testimony is excluded.

   *2. Dr. S*

Dr. S.'s case is also substantially dissimilar from Dr. Thayer's.  Dr. S. had never complained at all about patient safety issues regarding another physician.  Instead, Dr. S. was terminated because of her allegedly poor interpersonal relations with other staff members. Dr. S.

8

was terminated without any Ad Hoc Committee process or any process at all and she alleged that the interpersonal relations claim was merely a pretext for gender, age and/or disability discrimination. Dr. S. had herself requested a reasonable accommodation based upon a serious health condition, giving her disability discrimination claim some vigor. The one similarity between Dr. S. and Dr. Thayer, and it is not an insignificant one, arises from the notion that the Hospital had a pattern of disciplining (or terminating) female physicians under the pretext of "disruptive physicians" or "bad interpersonal relationships" when the true motive was discriminatory, whether based upon disability or whistleblowing. Unlike with Dr. G., the parties would not need to try Dr. S's entire disability discrimination case. The Hospital agrees that it terminated Dr. S. because of poor interpersonal relationships and thus the testimony could be limited to the actual reason given for the discharge. While it would still be a considerable diversion, a jury could more easily determine whether the stated reason for termination was sound than if they were confronted with Dr. G.'s case and had to determine if indeed there actually were quality of care issues involved in the termination. In this respect, Dr. S's case is more like Dr. Thayer's. Nevertheless, I conclude that the probative value is minimal.

The complaints against Dr. Thayer for the most part did not come from alleged or unsubstantiated oral complaints by other EMMC employees. Dr. Mark Brown primarily orchestrated the case against Dr. Thayer, using events that unquestionably occurred and are not denied by Dr. Thayer. The jury can determine whether Dr. Brown was motivated by retaliatory animus because Dr. Thayer had complained about Dr. Tabbah and directed patients be sent to Maine Medical Center or whether his actions were taken because she was a "disruptive" physician requiring corrective action. It would needlessly confuse the record and the issues to

9

have the jury wrestling with the merits of either the Dr. G. or the Dr. S case. Plaintiff's motion in limine seeking leave to use this evidence is denied.

## CONCLUSION

Defendants' Motion to Bifurcate (Doc. No. 94) is DENIED.

Defendants' Motion in Limine to Exclude Defamatory Statements (Doc. No. 95) is DENIED in part, although any statements not alleged in the complaint cannot be used to establish the elements of Thayer's defamation claim.

Defendants' Motion in Limine on Count I (Doc. No. 99) is DENIED as to Dr. Thayer's own records and related testimony; GRANTED in relation to Dr. Tabbah's records, subject to developments at trial; and DEFERRED as to records of other physicians.

Plaintiff's Motion in Limine Seeking Admission of Testimony By Other Physicians Alleging Retaliatory Conduct (Doc. No. 93) is DENIED as to both Dr. G and Dr. S.

*So Ordered.*

June 9, 2010 /s/ Margaret J. Kravchuk
U.S. Magistrate Judge