# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

KRISTINE THAYER,                          )
                                       )
               Plaintiff           )
                                         )
v.                                        )        No. 1:09-CV-00019-MJK
                                         )
EASTERN MAINE MEDICAL CENTER and  )
MOHAMMED TABBAH,                          )
                                         )
             Defendants          )

## ORDER ON POST-TRIAL MOTIONS

Following the Jury's verdict on July 22, 2010, plaintiff Kristine Thayer and

defendants Eastern Maine Medical Center and Mohammed Tabbah all filed post-trial

motions.  Dr. Thayer has moved for a new trial pursuant to Rule 59 of the Federal Rules

of Civil Procedure on both counts of her complaint and against both defendants.  In the

alternative, she asks that the Court's judgment be amended as to Count I in order to award

her injunctive relief, declaratory relief, and nominal damages against Eastern Maine

Medical Center.  (Mot. to Amend J. and for New Trial, Doc. No. 160.)  Dr. Thayer has

also requested attorney fees and costs under the Maine Human Rights Act based upon her

contention that she prevailed on Count I of her complaint.  (Mot. for Att'y Fees and

Costs, Doc. No. 161.)   In the Defendants' renewed motion for judgment, Eastern Maine

Medical Center argues it is entitled to judgment as a matter of law on Count I because

there is insufficient evidence to support the Jury's finding that Eastern Maine Medical

Center took adverse employment action against Dr. Thayer in retaliation for whistleblower activity. For his part, Dr. Tabbah argues he is entitled to judgment as a matter of law on Count II because any defamatory statement he made regarding Dr. Thayer was privileged and the privilege was not abused. (Defs.' Renewed Mot. for J., Doc. No. 164.) Defendants' renewed motion for judgment is denied. Plaintiff's request for a new trial is also denied. However, Plaintiff's request for an amended judgment is granted, in part. Plaintiff's motion for attorney fees and costs is granted in a substantially reduced amount.

## THE BACKGROUND

Dr. Thayer's motion for new trial on Count I, the whistleblower retaliation claim, is predicated on an alleged error in evidentiary rulings. The evidentiary rulings in question have already been the subject of a written order (Doc. No. 117 at 7-10) and the salient background will be related, below, in the discussion portion of this order. The background presented here simply provides a backdrop for the other post-trial motions. The parties have not marshaled the testimony and exhibits in support of their motions except in the most general sense and this order will not provide an elaborate recounting of specific testimony or exhibits that the parties themselves have not brought into focus.

Kristine Thayer, M.D., a surgeon, sued her former employer, Eastern Maine Medical Center, under Maine's Whistleblowers' Protection Act, 26 M.R.S. §§ 831-840, claiming that the hospital retaliated against her for complaining about another physician's practices, resulting in her constructive discharge. She sought "back pay, front pay, compensatory damages, punitive damages, attorney's fees, interest, costs and such further

relief as the court deems just." (Am. Compl. Count I ¶ 37, Doc. No. 31.) Dr. Thayer also sued Dr. Mohammed Tabbah, the physician about whom she complained, alleging defamation in the form of slander *per se*. (Id., Count II.) Although the Jury answered some questions on the jury verdict form favorably as to Dr. Thayer's position on both claims, the Jury ultimately awarded her no monetary damages against either defendant. (Jury Verdict, Doc. No. 156.)

## A.    Count I – Whistleblower Retaliation

### 1. A Summary of the Whistleblower Trial

Eastern Maine Medical Center hired Dr. Thayer to serve as a pediatric surgeon in the spring of 2005, after retaining her as a locum tenens in 2004. Dr. Thayer had what could be described as an acrimonious professional relationship with Dr. Mohammed Tabbah, a pediatric gastroenterologist. She reported to her chief of pediatrics, Dr. Mark Brown, that she considered Dr. Tabbah's treatment of certain patients to be below standard. There was evidence from which the jurors could find that Dr. Thayer's relationship with certain other physicians was negative and confrontational.

In late 2007, Dr. Brown requested that an Ad Hoc Committee be appointed to evaluate whether Dr. Thayer deserved some reprimand or corrective action for being a "disruptive physician." An Ad Hoc Committee formed and conducted an investigation based on Dr. Brown's charges. At the conclusion of the investigation it recommended to the Medical Staff Executive Committee that it adopt a corrective action plan. The Executive Committee did so and its plan imposed a requirement on Dr. Thayer that she engage in anger management counseling and threatened additional disciplinary action if

there were any further disruptive behavior.  Meanwhile, Dr. Thayer had taken a leave of absence from Eastern Maine Medical Center and chose not to return in light of the corrective action plan.

In her complaint, and at trial, Dr. Thayer alleged that Dr. Brown's decision to refer her to peer review before an ad hoc committee was motivated by retaliatory animus for her whistleblowing activity concerning Dr. Tabbah's alleged failure to adhere to the standard of care in his treatment of certain patients.  She also alleged that Dr. Brown influenced or manipulated the way that the evidence was presented against her in order to cast her in a false light.

### 2.  *The Whistleblower Verdict*

As to Count I, the claim of whistleblower retaliation, the Jury's verdict indicates "yes" in response to the question:  "Do you find that Eastern Maine Medical Center is liable to Dr. Kristine Thayer for violation of the Maine Whistleblowers' Protection Act?"  However, the Jury responded "-0-" in response to the question:  "What amount of compensatory damages (other than lost wages and benefits) do you award against Eastern Maine Medical Center?"

The Jury was also asked to indicate whether Dr. Thayer succeeded in proving constructive discharge.  If so, the Jury was permitted to award damages for lost wages and benefits from the date of constructive discharge through the date of the verdict.  The Jury's response to verdict question 2 reflects a finding that Dr. Thayer was not constructively discharged.

Finally, the Jury was asked to determine whether Dr. Thayer proved malice or

reckless indifference in support of an award of punitive damages. The Jury's response to verdict question 3 reflects a finding that Dr. Thayer failed to prove malice or reckless indifference on the part of Eastern Maine Medical Center.

Neither the jury instructions nor the verdict form invited an award of nominal damages. However, Dr. Thayer made no request for a nominal damages award in her proposed jury verdict form (Doc. No. 127) and proposed jury instructions (Doc. No. 125), or during any conference on instructions.

Based on the jury instructions, the Jury's affirmative response to question 1 reflects a finding that Dr. Thayer engaged in activity protected by the Maine Whistleblower Protection Act, that Eastern Maine Medical Center took adverse employment action against her after she made the report, and that the hospital did so based on a retaliatory motive. The Jury's response as to compensatory damages, however, indicates a finding that the Jury was not persuaded by Dr. Thayer's presentation on emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and/or other non-monetary loss.

**B.      Count II – Defamation**

*1. Summary of the Defamation Trial*

As to the defamation claim, the only issue tried related to statements Dr. Mohammed Tabbah made to Elizabeth Britton, whose young son was a patient of Dr. Tabbah and underwent surgery performed by Dr. Thayer. The salient evidence consisted of the testimony of Elizabeth Britton, her husband Adam Britton, and Dr. Tabbah, and certain treatment notes relating to the treatment of Britton's son. The evidence presented

to the Jury could support a finding that Dr. Tabbah told Elizabeth Britton that Dr. Thayer had cut her son's intestines in connection with a surgical procedure and that Dr. Thayer had not actually done so. According to Elizabeth Britton, she understood Dr. Tabbah to be saying that a cut to the intestines might be to blame for post-operative discomfort. The Jury also could have found that Elizabeth Britton was uncertain about what exactly Dr. Tabbah said to her, that she just wanted to know what was going on and what she should do about her son, and that she never formed an opinion that Dr. Thayer was not a competent surgeon. The Jury was not required to find that Dr. Tabbah called into question Dr. Thayer's competence as a surgeon. Dr. Tabbah denied making any statement disparaging Dr. Thayer's skills.

Dr. Thayer sought no special damages and offered no evidence of economic harm arising from defamation. Rather, she sought a finding of defamation *per se*; that Dr. Tabbah made false statements related to and directly tending to prejudice or injure her in respect to her profession, for which she sought general damages for mental suffering and humiliation.

### 2. *The Defamation Verdict*

On Count II, in response to the verdict form question whether Dr. Tabbah "made a false and defamatory statement of fact to Elizabeth Britton concerning Dr. Thayer with the required degree of fault," the Jury responded: "Yes." The second verdict form question asked: "Do you find that the defamation in question related to and directly tended to prejudice or injure Dr. Thayer in respect to her profession?" The Jury responded: "No." Because Dr. Thayer did not assert a claim for special damages

(specific economic loss arising from the defamation), and because Dr. Thayer had not proven defamation *per se*, there was no basis for the Jury to award any damages under Maine law.[1]   Based on the defamation instructions, the Jury's verdict reflects a finding that Dr. Tabbah made a false and defamatory statement concerning Dr. Thayer to patient Elizabeth Britton, but that the statement did not directly tend to prejudice or injure Dr. Thayer in respect to her profession.

## C.      The Judgment

Following the return of the Jury's verdict, and after listening to the oral arguments of counsel, I directed the clerk to enter judgment for the defendants on both counts of the complaint.  (Doc. No. 159.)  The judgment entered for EMMC reflects that it prevailed on Thayer's claims for compensatory damages, exemplary damages, and back pay, the only remedies requested from the Jury.  (Id.)  The Jury's positive response to the verdict form question pertaining to EMMC's retaliatory conduct was not incorporated into the judgment.

### DISCUSSION

This discussion is in three parts.  Part A addresses Eastern Maine Medical Center's and Dr. Tabbah's renewed requests for judgment as a matter of law (Doc. No. 164).  Part B addresses the varied requests made in Dr. Thayer's motion to amend the judgment and for new trial (Doc. No. 160).  Part C addresses Dr. Thayer's petition for an award of fees and costs (Doc. No. 161).

---

[1]          Although Dr. Thayer did not request an instruction on nominal damages, she agreed that a nominal damages instruction was called for under Maine law in the event that the Jury should find defamation *per se* but not award general damages.  Because Dr. Thayer did not attempt to prove special damages arising from defamation and because the Jury did not find defamation *per se*, it could not consider awarding nominal damages.

**A.      Defendants' Renewed Motion for Judgment as a Matter of Law**

The Defendants argue that, as a matter of law, the evidence presented at trial cannot support the plaintiff-favorable findings contained in the Jury's verdict. Eastern Maine Medical Center says it could not have violated Dr. Thayer's rights under the Whistleblower Protection Act because a committee of impartial physicians agreed to impose a corrective action plan on Dr. Thayer and no evidence demonstrated that the members of the committee were personally motivated by retaliatory animus or that Dr. Brown was motivated by such animus when he initiated the peer review process. (Renewed Mot. for J. at 1-2, Doc. No. 164.) Dr. Tabbah says he could not have defamed Dr. Thayer because no reasonable jury could find that he abused a conditional privilege associated with the doctor-patient relationship. (Renewed Mot. for J. at 3.)

To grant a Rule 50 motion for judgment as a matter of law, a court must conclude that, considering all the evidence in the record, no reasonable jury could have reached the same result. Monteagudo v. Asociacion de Empleados del Estado Libre Asociado, 554 F.3d 164, 170 (1st Cir. 2009). The court must view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the verdict, and disregard evidence favorable to the moving party that the jury was not required to accept. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

*1. EMMC's Motion for Judgment on Count I*

Eastern Maine Medical Center's argument is rejected. Based on all the evidence presented at trial, the Jury could reasonably have found that Dr. Thayer's whistleblower

activity about Dr. Tabbah was the "but for" cause behind her supervisor's decision to institute a corrective action process. Additionally, the weight of the charges presented to the committee pertained to activity that the Jury could have regarded as whistleblower activity about patient care. Finally, the Jury could have found that the corrective action plan imposed by committee action threatened further discipline if Dr. Thayer engaged in additional whistleblower activity. Under these circumstances, committee action does not insulate Eastern Maine Medical Center against a finding of liability.

### 2. *Dr. Tabbah's Motion for Judgment on Count II*

Dr. Tabbah's argument is also rejected. Based on the evidence, it is more likely than not that the Jury found that a conditional privilege applied with respect to Dr. Tabbah's communications with Elizabeth Britton, but that Dr. Tabbah abused the privilege by uttering a known falsehood or recklessly stating a falsehood that was not supported by the patient's medical records. The most likely finding in this regard is that Dr. Tabbah told Elizabeth Britton that Dr. Thayer had cut the child's intestine without having any evidence to support the statement. Based on the evidence, there is nothing remarkable about such a factual finding.

### B. Plaintiff's Motion to Amend Judgment and for New Trial

### 1. *Motion for New Trial on Count I*

Dr. Thayer requests a new trial pursuant to Rule 59. According to the Rule, the court may grant a new trial on all or some issues after a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). The First Circuit has held that, as a general rule, a verdict may be set

aside and new trial ordered when the verdict is against the clear weight of the evidence, is based on false evidence, or will otherwise result in a clear miscarriage of justice. Phav v. Trueblood, 915 F.2d 764, 766 (1st Cir. 1990).

Dr. Thayer argues that erroneous evidentiary rulings made Eastern Maine Medical Center "appear more benign and Dr. Thayer less so," and "undoubtedly" explain why the Jury found a violation of the Whistleblower Protection Act but failed to award compensatory damages. (Pl.'s Mot. to Amend J. and for New Trial at 4, Doc. No. 160.) This argument arises from my *in limine* rulings limiting Dr. Thayer's presentation concerning two other female physicians who were subject to what Dr. Thayer views as discriminatory employment acts by Eastern Maine Medical Center. I entered a written order on Dr. Thayer's motion *in limine* seeking admission of this testimony prior to trial. (See Doc. No. 117.) Having now had the benefit of nine days of trial testimony, I am even more convinced that the introduction of this testimony would not have assisted the Jury in making the determinations it had to make.

Thayer's other claims of evidentiary error relate to admission of testimony that two male physicians received similar corrective action plans during roughly the same time period and deposition testimony from a former female pediatric surgeon that she voluntarily left the hospital's employ primarily because of a personality conflict with Dr. Thayer. The fact that other committees had issued similar corrective action plans was offered by Eastern Maine Medical Center to demonstrate lack of discriminatory intent by the hospital. The testimony from the pediatric surgeon was offered to show that the decision-makers who convened the Ad Hoc Committee that ultimately took corrective

action against Dr. Thayer were motivated in part by prior incidents that were not referred to the Committee.  None of this testimony directly related to the compensatory damages[2] to be awarded to Dr. Thayer in the event that the Jury found the hospital acted with retaliatory motivation.  The fact that the Jury answered the first question on Count I in the affirmative undermines the contention that these evidentiary rulings unfairly prejudiced Dr. Thayer.  The motion for a new trial based on evidentiary errors is denied.

    *2.  Motion for New Trial on Count II*

Plaintiff's defamation claim against Dr. Tabbah was a claim of defamation *per se*, premised on the contention that the defamation "related to and directly tended to prejudice or injure Dr. Thayer in respect to her profession."[3]  In the Jury's response to the first verdict question, it found that Dr. Tabbah made a false *and defamatory* statement concerning Dr. Thayer.  Based on the jury instructions, this means that the Jury found that Dr. Tabbah made a statement of fact that would tend to harm Dr. Thayer's reputation in the estimation of the community or deter third persons from associating or dealing with her.  This is the legal definition of a "defamatory" statement.  Ballard v. Wagner, 2005 ME 86, ¶ 10, 877 A.2d 1083, 1087.  Because the Jury answered yes to this question (and because Dr. Thayer was not alleging any special harm), the verdict form asked the Jury to address whether the statement in question also directly tended to injure Dr. Thayer in her

---

[2]    The testimony concerning the two male physicians who remained at the hospital in spite of being the recipients of similar corrective action plans may also have been relevant to the Jury's consideration of the constructive discharge claim.  In my view there was nothing unfairly prejudicial about admitting the evidence on that issue, even if it did result in the Jury denying the claim for back pay based upon the claim of constructive discharge.

[3]    See Marston v. Newavom, 629 A.2d 587, 593 (Me. 1993) ("We previously have stated the standard for finding slander per se in terms almost identical to those used by the court as follows:  'If slanderous words . . . directly tend to the prejudice or injury of one in his profession, trade or business they are actionable [as slander per se].'  The instruction was not erroneous.") (citation omitted).

profession.  The reason for this question was explained in the jury instructions under the heading "special harm":

> Ordinarily, in order to be actionable, a defamatory statement must result in special harm to the plaintiff.  Special harm means a loss having economic or pecuniary (monetary) value.  However, in some situations, liability for defamation exists even in the absence of proof of special harm.  One such situation is where a false and defamatory statement (or slander) relates to the defamed person's fitness to engage in her profession, trade, or business and directly tends to prejudice or injure the defamed person in that regard.  Dr. Thayer does not allege any special harm, but she does allege the kind of defamation that concerns her fitness to engage in her profession, trade, or business.  If you find that all of the other elements of defamation exist and that the defamatory statement or statements in question related to and directly tended to prejudice or injure Dr. Thayer in respect to her profession, then you must return a verdict for Dr. Thayer even in the absence of special harm.  On the other hand, if you find that all of the other elements of defamation exist, but that the defamatory statement in question did not tend to prejudice or injure Dr. Thayer in respect to her profession, then you cannot find Dr. Tabbah liable.

During their deliberations the jurors sent a note to the court asking whether the question required them to consider a temporal distinction:  "*Did* Tabbah's defamation affect Thayer's profession?" or "*Could* Tabbah's defamation affect Thayer's profession?"  (Juror Note 2.)  With the agreement of counsel for both parties, I provided the jurors with a written response informing them that they should concentrate on the point in time when the statement was made and that the question they should answer is, "did the statement or statements, if you find them to be defamatory, relate to and directly tend to prejudice or injure Dr. Thayer in respect to her profession?"  (Partial Transcript at 6, Doc. 162.)  Subsequently, and over the *defendant's* objection, I brought the jurors into the courtroom in order to follow up with an oral instruction informing them that they must find that any defamatory words that were uttered were "words that on their face without further proof

or explanation injure the plaintiff in her business or occupation, words which by their very nature cause an injury to someone in her business or occupation." (Id. at 10.) This supplemental instruction was drawn from Ramirez v. Rogers, 540 A.2d 475, 478 (Me. 1988) ("Specifically, the term slander per se refers to words that on their face without further proof or explanation injure the plaintiff in his business or occupation, i.e., are defamatory per se.").

The only logical interpretation of what the Jury found is that Dr. Tabbah made a false statement that would tend to lower Dr. Thayer in the estimation of the community, if true, but that the statement in question was not the kind of statement that would result in such injury "without further proof or explanation." The testimony of the Brittons could explain this subtle distinction between defamation and defamation *per se*. Elizabeth Britton's testimony, especially on cross examination, was not very clear. She testified, in effect, that Dr. Tabbah said something to the effect that Dr. Thayer had cut her son's intestine and that she was left uncertain about what had happened and what would happen with her son's condition, but did not ever form an opinion that Dr. Thayer was not a competent surgeon. For his part, Adam Britton testified that he spoke with Elizabeth after her conference with Dr. Tabbah and that he did not get the impression from her that Dr. Tabbah had called into question Dr. Thayer's competence as a surgeon.

Elizabeth and Adam Britton's testimony provides a reasonable basis for the Jury's answer to the question relating to slander *per se*. Whatever false and defamatory statement the Jury found Dr. Tabbah to have uttered, the Jury reasonably concluded that Dr. Tabbah's words did not *directly* tend to prejudice or injure Thayer in her practice as a

surgeon without some further proof or explanation.  The motion for a new trial on Count II is denied.[4]

### 3.  Motion to Amend Judgment on Count I

The district court has substantial discretion to grant or to deny a motion to alter or amend judgment brought under Rule 59(e).  See In re Spittler, 831 F.2d 22, 25 (1st Cir. 1987) ("We have repeatedly held that, once the ball has ended, the district court has substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material or a new theory.").  Where, as here, there is no new evidence, reversal of an order failing to alter or amend a judgment requires a showing of abuse of discretion, or manifest error of law or of fact in the judgment.  Id.

Following the return of the Jury's verdict, the Clerk, at the Court's instruction, entered judgment in favor of Defendant Eastern Maine Medical Center on Dr. Thayer's claims for compensatory damages and back pay, and judgment for Defendant Dr. Tabbah on the claim for defamation.  (Judgment, Doc. No. 159.)  Dr. Thayer has moved to alter or amend the judgment to reflect judgment in her favor on Count I and for inclusion of an

---

[4]      The Restatement authors offer the following comment:  "With the exception of a slander concerning an incumbent of an office not for profit, the charge to be slander actionable per se must be of a sort that tends so to lower the professional business or trade reputation of the plaintiff as to be likely to affect his gains in the office."  Restatement (Second) of Torts § 573 cmt. b. (1977).  The Restatement offers an illustration that seems germane to the current predicament:

> Single act.  A statement imputing a single mistake or act of misconduct in office or in the conduct of a business or profession is actionable under the rule stated in this Section only if the act fairly implies an habitual course of similar conduct, or the want of the qualities or skill that the public is reasonably entitled to expect of persons engaged in such a calling.  A statement that a physician has killed a patient by an overdose of a drug or that a surgeon has been guilty of negligence in the performance of an operation is actionable.  . . . .  On the other hand, an imputation that a patient treated by a physician has died because of unsuccessful treatment in the particular case is not necessarily actionable without proof of special harm, since the fallibility of even the most skillful practitioners is such that the mistake, if any, may have been an entirely reasonable one.  . . . .

Id. illus. d.

award of nominal damages and/or injunctive and declaratory relief. Dr. Thayer bases this portion of her motion on the wording of the Maine Human Rights Act, 5 M.R.S. § 4613, which provides that the court "must" award an appropriate remedy if the court finds unlawful discrimination has occurred: "In any action filed under this Act by the commission or by any other person: . . . . B. If the court finds that unlawful discrimination occurred, its judgment must specify an appropriate remedy or remedies for that discrimination." 5 M.R.S. § 4613(2)(B). The Act lists appropriate remedies that "may" be included in the judgment. Id. A "cease and desist" order is allowed, as is an order of reinstatement. Id. § 4613(2)(B)(1), (2). In cases of employment discrimination, compensatory damages are also allowed. Id. § 4613(2)(B)(8). Nominal awards and declaratory relief are not mentioned. Dr. Thayer requests that the Court's judgment be amended to include a cease and desist order and an order to "remove" or "expunge" from her file the corrective action plan issued by Eastern Maine Medical Center by letter dated October 25, 2007. (Mot. to Amend J. at 1-2.) Dr. Thayer also requests an award of nominal damages in an unspecified amount. (Id. at 2.)

Dr. Thayer cites Azimi v. Jordan's Meats, Inc., 456 F.3d 228 (1st Cir. 2006), in support of her motion to amend the judgment. In Azimi, Judge Carter presided over a race discrimination trial in which a jury returned a verdict that the defendant employer discriminated against the plaintiff, but rejected the plaintiff's testimonial evidence and found that he had not suffered any compensable injury. Judge Carter entered judgment for the defendant on the verdict. Following post-trial motions, Judge Carter entered declaratory relief for the plaintiff, but denied an award of nominal damages because the

plaintiff "never requested that the jury be instructed on the issue of nominal damages [and] never requested an award of nominal damages [from the Court] based on the jury's liability verdict." Azimi v. Jordan's Meats, Inc., 382 F. Supp. 2d 154, 157 (D. Me. 2005). On appeal, the First Circuit upheld Judge Carter's decision to withhold a nominal damages award based on decisional law that nominal damages can be forfeited and that a liability verdict does not compel such an award if a timely request is not made. Azimi, 456 F.3d at 240. The First Circuit observed that civil rights law in this Circuit is plaintiff-friendly because it permits a plaintiff to request nominal damages from the trial court upon or immediately after the return of the verdict. Id. (quoting Campos-Orrego v. Rivera, 175 F.3d 89, 98-99 (1st Cir. 1999) (affirming award of nominal damages in § 1983 case based on plaintiff's "sufficiently prompt post-verdict request")). Of course, because the issue in this case arises under Maine law, this precedent is not binding.

Ultimately, Thayer's only authority is Section 4613 of the Maine Human Rights Act, which requires that the Court's judgment award an appropriate remedy where unlawful discrimination has been found. As for an appropriate award to enter in light of the Jury's verdict, the Judgment will be amended to include a declaration of the Jury's affirmative verdict on Count I, question one. However, Dr. Thayer's request for a cease and desist order is denied. The Jury found that Dr. Thayer voluntarily resigned and in light of the fact that Dr. Thayer is no longer an employee of Eastern Maine Medical Center, the circumstances do not call for a cease and desist order. Nothing in Dr. Thayer's presentation persuades me that a cease and desist order would materially alter the parties' relationship or preserve a right held by Dr. Thayer that is otherwise apt to be

violated. Dr. Thayer also requests an order that the corrective action letter be expunged from her employment record. This request is also denied. The declaratory relief resulting from this order is a sufficient caution for Eastern Maine Medical Center insofar as any future action or representation concerning Dr. Thayer's employment history is concerned.

The final question is whether to award nominal damages. Section 4613 does not speak of nominal damages, though it does recognize a right to compensatory relief. The Maine Supreme Judicial Court, sitting as the Law Court, has not yet addressed whether a successful plaintiff in an action to vindicate human rights is entitled to an award of nominal damages when compensatory damages are not awarded. Maine common law concerning nominal damages does indicate, however, that in certain categories of intentional torts—invasion upon land (trespass) and invasion upon a personal, dignitary interest—nominal damages may be presumed upon a finding that the invasion occurred. Medika v. Watts, 2008 ME 163, ¶ 5, 957 A.2d 980, 982 (trespass); Gaffny v. Reid, 628 A.2d 155, 158 (Me. 1993) ("Some damage is presumed to flow from a legal injury to a real property right."); Knight v. Penobscot Bay Med. Ctr., 420 A.2d 915, 918 (Me. 1980) (intrusion upon solitude).[5] Although the Law Court has not issued similar opinions in relation to all of the intentional torts, it has held that nominal damages are appropriate in cases of assault and battery where no actual injury is caused. Parker v. Kirkpatrick, 124 Me. 181, 184, 126 A. 825, 826 (1924) (holding in an action for assault and battery that

---

[5]    The Law Court has held that it is not manifest error to decline to instruct a Jury as to nominal damages in a case involving an intentional tort, particularly where the plaintiff may have made "the tactical choice . . . to avoid an instruction on 'presumed' damages . . . because he wanted the Jury to think only in terms of a large award of damages." Knight, 420 A.2d at 919.

plaintiff "was entitled to only nominal damages," in the context of reducing a larger award).

Ultimately, Dr. Thayer's request for nominal damages and Eastern Maine Medical Center's opposition are driven entirely by their respective concern over the motion for attorney's fees and costs. Presumably the parties would not ask their lawyers to expend their time fighting over a negligible sum of money were it not for the fee motion. Their real concern is that the law related to fee-shifting awards tends to favor a party who has won some underlying monetary award.[6] It seems strange to think that the presence or absence of a one dollar award would have such dire consequences, but Eastern Maine Medical Center goes so far as to argue that entry of such an award would violate the U.S. Constitution. (Opp'n to Pl.'s Mot. to Amend J. at 2, Doc. No. 163.) Despite my trepidation at this suggestion,[7] I find it "appropriate" under 5 M.R.S. § 4613 to award Dr. Thayer one dollar ($1.00) in light of the Jury's finding that Eastern Maine Medical Center violated the Maine Whistleblower Protection Act, an intentional violation of a human right protected under Maine law.

Accordingly, the Clerk is instructed to amend the judgment so that the second

---

[6] The First Circuit has affirmed a punitive damages award in the absence of an award of compensatory damages or nominal damages and suggested that nominal damages would be an entitlement upon a timely request for additur. De Jesus Nazario v. Rodriguez, 554 F.3d 196, 205-6 & n.12 (1st Cir. 2009).

[7] The addition of a nominal damages award in the amount of $1.00 does not "re-examine" any "fact tried by a Jury," U.S. Const. amend. VII, because it is consistent with the Jury's findings both that Eastern Maine Medical Center intentionally violated Dr. Thayer's rights and that Dr. Thayer did not prove any emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary losses. This order does not attempt to determine whether an award of nominal damages is a legal entitlement under Maine law where a violation of the Whistleblower Protection Act is established, but if it is an entitlement, this would further undermine the suggestion that the Seventh Amendment is in issue. Robinson v. Cattaraugus County, 147 F.3d 153, 162 (2d Cir. 1998) ("Although the Seventh Amendment generally prohibits a court from augmenting a Jury's award of damages, . . . that proscription is not violated by the court's entering judgment awarding nominal damages when the Jury has failed or refused to do so and the claimant is entitled to such damages as a matter of law.") (citations omitted).

paragraph reads as follows:

> Based on the Jury's verdict so finding, the Court declares that Eastern Maine Medical Center violated Plaintiff Kristine Thayer's rights under the Whistleblower Protection Act. Because compensatory damages were not awarded by the Jury, judgment is hereby entered for the Plaintiff Kristine Thayer as against Defendant Eastern Maine Medical Center in the sum of $1.00 on Count I.

## C.    Plaintiff's Motion for Attorney's Fees and Costs

Finally, Dr. Thayer requests an award of attorney's fees and costs based on the Jury's finding that Eastern Maine Medical Center violated her rights under the Maine Whistleblower Protection Act and based on the provision of the Maine Human Rights Act that allows a court, "in its discretion," to make a fee- and cost-shifting award to a "prevailing party." 5 M.R.S. § 4614. Dr. Thayer argues that such an award is appropriate in this case to safeguard and encourage private enforcement of important statutory rights. She allows in her motion that any award should be reduced by 20% in light of her failure to obtain an award of compensatory damages. (Pl.'s Mot. for Att'y Fees and Costs at 2-3, Doc. No. 161.)

In opposition to the fee request, Eastern Maine Medical Center argues that Dr. Thayer is not really a prevailing party under the Maine Human Rights Act. According to Eastern Maine Medical Center, Dr. Thayer cannot be regarded as a prevailing party because the Jury did not award her any monetary relief and because the Court so recognized when it entered judgment for the defendants following return of the verdict. Eastern Maine Medical Center directs the Court to <u>Maine Human Rights Commission v. Allen</u>, 474 A.2d 853, 857-88 (Me. 1984), where the Law Court held that prevailing party

status under the Maine Human Rights Act should be evaluated consistently with First Circuit law related to 42 U.S.C. § 1988, the fee-shifting statute applicable to federal civil rights litigation. (Obj. to Pl.'s Fee Mot. at 1-2, Doc. No. 165.)

In <u>Allen</u>, the Law Court held that a party should receive a fee-shifting award, so long as prevailing party status is shown. <u>Id.</u> at 858. As for the standard to govern such awards, the Law Court pointed to the test stated in <u>Wyman v. Inhabitants of the Town of Skowhegan</u>, 464 A.2d 181, 183 (Me. 1983), where the Law Court adopted a standard enunciated by the First Circuit in <u>Nadeau v. Helgemoe</u>, 581 F.2d 275, 279-81 (1st Cir. 1978). That standard was designed to address prevailing party status when litigation is resolved by means of a consent decree, but the standard is not dissimilar to the standard applied when litigation concludes by judgment on a jury verdict: the litigation must have compelled a material alteration in the parties' legal relationship for the benefit of the plaintiff. <u>Wyman</u>, 464 A.2d at 183-84. A plaintiff need not win on all issues to meet this standard, but a significant issue must be resolved so that the plaintiff achieves some of the benefit sought through litigation. <u>Id.</u> at 184. Since <u>Wyman</u>, the Supreme Court has held that a party who obtains a nominal damages award is a prevailing party for purposes of civil rights litigation under Section 1988. <u>Farrar v. Hobby</u>, 506 U.S. 103, 112 (1992).

Dr. Thayer is a prevailing party under Maine law. Dr. Thayer's primary objective in this litigation was to clear what she regarded as a serious cloud on her professional record. By means of this litigation she convinced the Jury that she was not disciplined for being a disruptive physician, but for complaining about another doctor's practices and raising patient safety concerns. The Jury's finding that Eastern Maine Medical Center

subjected Dr. Thayer to a corrective action plan because she complained about another doctor's practices in relation to a standard of care is a significant finding, one that, arguably, casts a more negative light on Eastern Maine Medical Center than any award of compensatory damages would.  As a legal matter, Dr. Thayer recovered a measure of dignity, though she obtained no monetary compensation.  She also called into question the propriety of Eastern Maine Medical Center's practices by demonstrating retaliatory animus with respect to whistleblower activity associated with patient care.  The mere fact that the Jury found that Dr. Thayer did not suffer emotional harm, or that her subjective experience of emotional harm was unreasonable in light of the overall circumstances, or that it might have been avoided through a reasonable course of action, does not negate the fact that she succeeded in proving that Eastern Maine Medical Center violated her rights and won back a measure of gravitas that had been taken from her by Eastern Maine Medical Center.

In Chalout v. Interstate Brands Corp., 296 F. Supp. 2d 2 (D. Me. 2004), Judge Carter awarded attorney's fees in a Maine Human Rights Act case where the plaintiff obtained an award of $1.00 on a jury verdict.  Although the defendant in that case did not dispute the plaintiff's status as a prevailing party, and although Judge Carter recognized that Farrar, 506 U.S. at 115, suggests that a nominal damages award makes it reasonable to deny a fee-shifting award altogether, I agree with his assessment that a verdict finding unlawful discrimination or retaliation represents "a measure of success and serv[es] a public good through the potential of its future deterrent impact."  Chalout, 296 F. Supp. 2d at 4.  Making a fee-shifting award under the circumstances will also afford some

measure of assurance to attorneys who are considering whether to represent individuals alleging illegal retaliation. The appropriate resolution, under the circumstances, is to make a fee-shifting award for time expended by counsel on the whistleblower claim, but significantly reduce the award to account for limited success. De Jesus Nazario v. Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009); see also O'Connor v. Huard, 117 F.3d 12, 17-18 (1st Cir. 1997); Chalout, 296 F. Supp. 2d at 4.

*1. The lodestar figure*

To determine the lodestar, the number of hours productively spent are multiplied by a reasonable hourly rate to calculate a base figure. The number of hours may be adjusted to remove time that was unreasonably, unnecessarily, or inefficiently devoted to the case. Hours spent on failed claims are disallowed. De Jesus Nazario, 117 F.3d at 207. Thayer's counsel claims over $140,000.00 as the appropriately reduced lodestar figure that should be awarded. He claims to have made deductions for the defamation claim and the gender discrimination claim.

The affidavits filed in support of Plaintiff's motion for fees support an hourly rate of $225.00 for Attorney Baber's work in this case. However, they do not offer any support for the rates assigned to other counsel or to paralegal effort. As a result, I have excluded all billings other than those for Attorney Baber's time. The affidavits, billing exhibits, and concessions made by Dr. Thayer in her reply memorandum (Doc. No. 167) reflect that a reasonable loadstar calculation for the whistleblower claim is as follows:

a.   April 3, 2008—December 4, 2008

Attorney Baber has submitted billings for 24.3 hours of his time through December 4, 2008, which amounts to $5467.50.  Dr. Thayer concedes that time spent between August 3, 2008, and December 4, 2008, should be reduced by 40% to account for time spent on other theories of liability, including a gender discrimination theory abandoned prior to trial.  My impression is that gender discrimination was a major focus for Dr. Thayer even at the commencement of this litigation.  This pre-suit concession should be more on the order of 60% to account for both gender discrimination and defamation.  Additionally, there does not appear to be any reason why this concession would not reach back to Attorney Baber's first meeting with Dr. Thayer on April 3, 2008. Reducing Attorney Baber's time for this period by 60% results in a lodestar calculation of $2187.00.

b.   January 13, 2009—November 10, 2009

Dr. Thayer describes this period as a period beginning with the initiation of suit through the amendment of her complaint, including discovery.   The billings support a finding of an additional 140 hours expended by Attorney Baber in this time period.  Dr. Thayer suggests a 30% reduction in the billings to account for time spent on other theories and on discovery associated with Elizabeth Britton, but I fail to see why this period should be treated differently than the prior period.  The fact that Dr. Thayer came to the conclusion that she should abandon her gender discrimination claim does not mean that it was not a primary focus of her discovery effort.  Assuming that her focus on gender discrimination did drop off in this period to some degree, that loss of emphasis

also coincided with increased effort associated with Dr. Shershow's expert testimony. For reasons explained in relation to the next period of time, effort associated with Dr. Shershow is subject to a deduction as well. Taking all of these factors into consideration, I apply the 60% deduction to all of the hours expended in this period. Attorney Baber's time for this period, reduced by 60%, results in a lodestar calculation of $12,600.00.

### c. November 19, 2009—April 1, 2010

Dr. Thayer describes this period as the summary judgment phase of the litigation. She maintains that there should be no discount for billings in this time period. It is true that gender discrimination was no longer part of the case and that summary judgment did not address the defamation claim. However, some discount is called for because the summary judgment issues included a constructive discharge claim that failed at trial. Additionally, a number of hours went into a Daubert motion to limit or prevent testimony by Dr. Shershow. Not all of the attorney's fees associated with Dr. Shershow should be shifted to Eastern Maine Medical Center because his testimony was designed, in part, to support the constructive discharge theory. Due to various block billing entries (e.g., Jan. 13-28, 2010) there is no way to determine the exact number of hours spent on the constructive discharge theory. On balance, a 20% reduction is fair and reasonable for the billings made throughout the summary judgment time period. The billings demonstrate 134.4 hours expended by Attorney Baber in this time period. A 20% reduction yields 107.5 hours, resulting in a lodestar of $24,192.00.

d.  April 5, 2010—July 22, 2010

Dr. Thayer describes this period as the pretrial through trial phase.  The billings support a finding of an additional 275.1 hours expended by Attorney Baber in this time period.  Dr. Thayer is willing to concede 10% of this time as being attributable to the defamation claim.  Based on the time expended on the defamation claim at trial, that is a fair approximation, though perhaps a bit shy of the mark.  I conclude that a 10% reduction is reasonable provided that Dr. Thayer also concede all of the 11.5 hours expended by Attorney Baber on July 12, the first day of trial.  Although Attorney Baber did not spend all of his time on July 12 on the defamation claim, it was the primary focus and loss of the additional time spent on this day accounts for subsequent examination of Dr. Tabbah and Dr. Thayer in relation to the defamation claim and, when added to the 10% concession, more accurately accounts for the effort associated with the defamation claim.  With these deductions, the billings for this period support a lodestar calculation of $53,379.00.

*2.  Further deduction for partial success*

The lodestar total for the whistleblower retaliation claim comes to $92,358.00.  To account for Dr. Thayer's failure to receive an award of compensatory damages, discretion is exercised to reduce the fee award by 60%, resulting in a fee award in the amount of $36,943.20.  Plaintiff's motion for fees is granted in this amount.

*3.  Costs*

Dr. Thayer's motion includes a request for costs in the amount of $35,563.64.  Eastern Maine Medical Center objects to components of the bill of costs.  One of the

objections relates to awarding costs associated with expert witness fees. In this case, $24,884.14 of the bill of costs relates to the expert witness fee for John Shershow, M.D. Eastern Maine Medical Center argues that shifting the entire costs of Dr. Shershow to it would be unfair because (1) the Whistleblower Protection Act and the Maine Human Rights Act do not expressly authorize the shifting of expert witness fees; (2) "Dr. Shershow's testimony did not contribute to any success on the part of the Plaintiff"; and (3) the fees charged are "unreasonable and exorbitant." (Obj. to Pl.'s Mot. for Atty. Fees and Costs at 7.)

Maine law allows a court to award to a prevailing party "reasonable attorneys' fees and costs." 5 M.R.S. § 4614. The Maine Superior Court has ruled that costs of an expert witness may be awarded under this provision. Berube v. A-P-A Transp., Inc., No. 83-403, 1985 Me. Super. Lexis 306 (Oct. 29, 1985). I conclude that an expert witness fee is appropriately shifted as part of a Maine Human Rights Act award where the expense is reasonably justified to support the claim. In this case, a significant portion of Dr. Shershow's testimony was directed toward explaining why issuance of the corrective action plan was harmful to Dr. Thayer's employment record and career prospects and why it justified her resignation from employment. The Jury's verdict on damages and constructive discharge reflects that they did not find this testimony persuasive. On the other hand, Dr. Shershow's testimony was helpful to Dr. Thayer because it also cast doubt on the idea that her conduct was fairly considered disruptive and the testimony therefore helped to distinguish her complaints about another physician's observation of a standard of care from what could fairly be regarded as disruptive behavior based on reasonable

peer review standards. Retention of an expert witness to support that position was justified in this case.

On balance, a reasonable cost-shifting award calls for a 60% or greater reduction in Dr. Shershow's fee to account for only partial success. However, the fee is also exorbitant by local standards, being based on an hourly rate of $600 and a rate of $7000 per day for trial testimony. The award will be limited to 20% of Dr. Shershow's total bill. Of the $24,884.14 requested, only $4,976.83 will be awarded. This leaves $10,679.50 in additional costs for the Clerk to consider under the normal rules of computing costs in a case of this nature.

## CONCLUSION

Defendants' Renewed Motion for Judgment as a Matter of Law (Doc. No. 164) is DENIED.

Plaintiff's Motion to Amend Judgment and for New Trial (Doc. No. 160) is GRANTED, IN PART. The request for a new trial of Count I and/or Count II is DENIED. The request to amend judgment is GRANTED, IN PART. Judgment will be amended to declare the Jury's finding that Eastern Maine Medical Center violated the Whistleblower Protection Act and to include an award of nominal damages, as follows:

> Based on the Jury's verdict so finding, the Court declares that Eastern Maine Medical Center violated Plaintiff Kristine Thayer's rights under the Whistleblower Protection Act. Because compensatory damages were not awarded by the Jury, judgment is hereby entered for the Plaintiff Kristine Thayer as against Defendant Eastern Maine Medical Center in the sum of $1.00 on Count I.

Plaintiff's Motion for Attorney's Fees and Costs (Doc. No. 161) is GRANTED. Reasonable attorney's fees are awarded in the amount of $36,943.20. The request for costs associated with Plaintiff's expert witness is allowed in the amount of $4,976.83. The Clerk will address the remainder of the bill of costs.

***So Ordered.***

September 23, 2010                           /s/ Margaret J. Kravchuk
                                             U.S. Magistrate Judge